THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES BURNSIDE, et al.,

    Plaintiffs,

v.

PETERBILT MOTORS COMPANY, et al.,

    Defendants.

3:17-CV-2121
(JUDGE MARIANI)

FILED
SCRANTON
JUN 2 8 2018
PER _____
DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION & PROCEDURAL BACKGROUND

Plaintiffs, James and Maria Burnside, initiated this litigation after Mr. Burnside was allegedly injured when the bobtail truck he was working on began leaking propane and caught fire.[1] Plaintiffs' Complaint raises claims for product liability, strict liability, negligence, and breach of warranty against a number of parties who designed, marketed, sold, repaired, and/or inspected the truck, propane tank, or propane tank's safety valve.[2] (Doc. 1). Presently before the Court is Defendant Peterbilt Motors Company's Motion to Dismiss. (Doc. 26). Within the Motion, Defendant Peterbilt asserts that (1) the Court lacks personal jurisdiction over Defendant Peterbilt and (2) Plaintiffs' Complaint fails to state a claim upon which relief can be granted. For the reasons that follow, the Court will grant the Motion in part, deny it in part, dismiss the claims against Defendant Peterbilt for lack of personal

---

[1] This action was initiated in the Eastern District of Pennsylvania but transferred to the Middle District of Pennsylvania upon the unopposed motion of Defendant Engineered Controls International, LLC. (Docs. 13, 18, 21).

[2] In addition, Mrs. Burnside has brought a loss of consortium claim against all Defendants. (Doc. 1).

jurisdiction, allow Plaintiffs' a period of time for jurisdictional discovery, and allow Plaintiffs' the opportunity to amend their Complaint.

## II. BACKGROUND

On July 21, 2017, Mr. Burnside was allegedly injured in Avoca, Pennsylvania, when the bobtail truck he was working on began leaking propane and caught fire. (Doc. 1 at ¶¶ 10, 15). According to Plaintiffs, "Defendant Peterbilt designed, marketed, sold, supplied and/or distributed the subject product, the bobtail truck and its component parts which caught fire." (*Id.* at ¶ 11). Plaintiffs further allege that Defendant Peterbilt placed the truck and component parts "into the stream of commerce." (*Id.* at ¶ 17). According to an affidavit submitted by Defendant Peterbilt in connection with its Motion, the subject truck was sold by Peterbilt of Connecticut to a purchaser located in Colorado and was then delivered to Canada. (Doc. 26-2 at ¶¶ 8, 10-11).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12, a defendant may move to dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93,

97 (3d Cir. 2004); see also Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003) ("It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff."); Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010) (same). "Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

## IV. ANALYSIS

Defendant Peterbilt first asserts that Plaintiffs have failed to establish a prima facie case of personal jurisdiction. (Doc. 26-1 at 6). In response, Plaintiffs have submitted no relevant evidence on their behalf. Further, neither party has requested a hearing on the Motion. Thus, the Court will consider the allegations in Plaintiffs' Complaint in analyzing the question of whether the Court can assert personal jurisdiction over Defendant Peterbilt. See Miller Yacht Sales, 384 F.3d at 97.

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). "Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court." Id. (internal citations omitted). In the

context of federal courts, it is the Fifth Amendment that imposes restrictions on the exercise of personal jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1783-84, 198 L. Ed. 2d 395 (2017). However, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014) (citing FED. R. CIV. P. 4(k)(1)(A)). In Pennsylvania, the state's long-arm statute provides that personal jurisdiction extends "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C.S.A. 5322(b). Accordingly, this Court may exercise personal jurisdiction over a defendant if doing so does not violate the Due Process Clause. *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).

There are two types of personal jurisdiction: "general jurisdiction and specific jurisdiction." *Sandy Lane Hotel*, 496 F.3d at 317. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. "But 'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Id.* (quoting *Daimler AG*, 134 S. Ct. at 760). "Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* (alteration in original) (quoting *Daimler AG*, 134 S. Ct. at 754). Here, Plaintiffs only argue that the Court has specific personal

jurisdiction over Defendant Peterbilt; they advance no argument that general jurisdiction exists.[3]

The Third Circuit has articulated a three-part test to determine whether a district court can exercise specific personal jurisdiction over a defendant. *See Sandy Lane Hotel*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" *Id.* (alteration in original) (quoting *Burger King*, 471 U.S. at 476).[4] The first two steps address "whether a defendant has the requisite minimum contacts with the forum," *D'Jamoos ex rel. Estate of Weingeroff*

---

[3] "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG*, 134 S. Ct. at 760 (internal quotations marks and alterations omitted). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017) (quoting *Daimler AG*, 134 S. Ct. at 761 n.19). Here, Plaintiffs' Complaint states only that Defendant Peterbilt is "a business entity, believed to be a private company, with headquarters and a principal place of business located at 1700 Woodbrook Street, Denton, Texas." (Doc. 1 at ¶ 2). Thus, Plaintiffs' Complaint fails to allege any facts on which a finding of general jurisdiction could be based.

[4] A slightly different test applies to claims of intentional torts. *See Sandy Lane Hotel*, 496 F.3d at 317 n.2 (citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). As no intentional torts are alleged here, the Court will apply the test as articulated in *Sandy Lane Hotel*.

*v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009), and the third step concerns whether exercising jurisdiction is reasonable under the circumstances.

Plaintiffs argue that the first *Sandy Lane Hotel* prong is met because the truck that caused the injury "was designed, marketed, sold, supplied and/or distributed by Defendant Peterbilt and ultimately arrived in Pennsylvania in the possession of [Mr. Burnside]'s employer." (Doc. 32-1 at 7). These assertions, however, do not explain how Defendant Peterbilt purposefully directed any of its activities at Pennsylvania. While the Court does not doubt Plaintiffs' statement that "[m]aterials sent into Pennsylvania provide some evidence of purposeful availment of the forum," (*id.*), Plaintiffs' Complaint fails to allege that Defendant Peterbilt sent any materials into Pennsylvania. Instead, Plaintiffs' Complaint alleges only that a truck that Defendant Peterbilt designed, marketed, sold, and distributed ended up in Pennsylvania. The pleading, however, is devoid of any allegations that Defendant Peterbilt played any part in directing the truck, or any other materials for that matter, into Pennsylvania. Nor does Plaintiffs make any other assertions as to how Defendant Peterbilt has purposefully directed any of its activities at Pennsylvania. Accordingly, the Court finds that Plaintiffs have failed to plead that Defendant Peterbilt purposefully directed its activities at Pennsylvania. As such, Plaintiffs cannot establish that Defendant Peterbilt has the required minimum contacts with Pennsylvania under the test articulated in *Sandy Lane Hotel*.

Nevertheless, this conclusion does not end the Court's analysis. Although not an altogether independent inquiry from the test articulated in *Sandy Lane Hotel*, courts have sometimes found that a defendant has the requisite minimum contacts with a forum under the "stream of commerce theory." Under this formulation of the rule, courts "find a basis for personal jurisdiction over a non-resident defendant, often a manufacturer or distributor, which has injected its goods into the forum state indirectly via the so-called 'stream of commerce.'" *D'Jamoos*, 566 F.3d at 104-05. In *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987), the Supreme Court attempted to outline the contours of when it is appropriate for a court to exercise personal jurisdiction over a defendant under a stream of commerce theory. Unfortunately, a majority of the Court did not endorse a single approach. As a result, two different tests emerged, each joined by four justices.

> The first plurality opinion, authored by Justice O'Connor, found that
>
> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Indus. Co.*, 480 U.S. at 112 (plurality opinion). The second plurality opinion, authored by Justice Brennan, endorsed a less demanding test, stating that

> [a] defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id.* at 117 (Brennan, J., concurring).

"Since *Asahi*, the Third Circuit Court of Appeals has not formally adopted the approach described in either plurality opinion." *Sieg v. Sears Roebuck & Co.*, 855 F. Supp. 2d 320, 326 (M.D. Pa. 2012). "Rather, our circuit court of appeals applies both standards announced in the *Asahi* plurality opinions." *Id.* Thus, this Court will only find that it can exercise specific personal jurisdiction over Defendant Peterbilt under a stream of commerce theory if both *Asahi* tests are met.[5]

In *Pennzoil Products Company v. Colelli and Associates, Inc.*, 149 F.3d 197 (3d Cir. 1998), the Third Circuit had occasion to apply both *Asahi* tests. Pennzoil was an oil refinery in Pennsylvania who allegedly incurred damages to its facilities as a result of a solvent contained in the oil. *Id.* at 199. The solvent was created and sold by Colelli, an Ohio corporation with its principal place of business in Ohio. *Id.* Colelli sold the solvent to

---

[5] A more recent Supreme Court decision, *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011), once again addressed the stream of commerce theory, but also failed to obtain the consensus of a majority of the justices. Consequently, the Third Circuit test remains unchanged in light of *J. McIntyre Machinery*. See *Sieg*, 855 F. Supp. 2d at 326-27.

several Ohio oil producers to prevent their oil wells from accumulating wax during the process of extracting paraffin laced oil from the ground. *Id.* The oil producers then sold some of the extracted oil, which still contained the solvent, to Pennzoil in Pennsylvania. *Id.*

In determining whether the Western District of Pennsylvania could assert personal jurisdiction over Colelli, the Third Circuit applied the two tests articulated in *Asahi*. *Id.* at 206. Applying Justice O'Connor's approach first, the Third Circuit found that Colelli's placement of its solvent into the stream of commerce was accompanied by the additional conduct of "Colelli sen[ding] samples of Colelli solvents to laboratory personnel at Pennzoil's refinery to preclude future contamination problems." *Id.* This, according to the Court, established both "an intent to 'design' a product which could be used to serve the Pennsylvania refinery market," and "'channels for providing regular advice to' Pennzoil's personnel in Pennsylvania." *Id.* at 206-07 (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 112). Turning next to Justice Brennan's test, the Court found that Colelli benefited from the sale of crude oil to Pennsylvania. *Id.* at 207. Thus, the Court "conclude[d] that Colelli did have the minimum contacts needed to support the exercise of personal jurisdiction in Pennsylvania." *Id.*[6]

---

[6] Recently, in *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760 (3d Cir. 2018), the Third Circuit appeared to call into question the continued validity of asserting specific personal jurisdiction under the stream of commerce theory. In *Shuker*, a three judge panel rejected the plaintiffs' jurisdictional arguments premised on stream of commerce, stating:

> A plurality of Supreme Court Justices has twice rejected the stream-of-commerce theory, see *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877-85, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011) (plurality opinion); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S.

9

Here, while Plaintiffs' Complaint asserts that "Defendant Peterbilt placed into the stream of commerce a defective product," (Doc. 1 at ¶ 17), this allegation on its own is wholly insufficient to satisfy either formulation of the stream of commerce theory. Specifically, there are no allegations of additional conduct on the part of Defendant Peterbilt that demonstrates its intent to serve the Pennsylvania market as required by Justice O'Connor's approach. Nor have Plaintiffs alleged that Defendant Peterbilt has economically benefited in some way by the sale of the truck in question to a buyer in Pennsylvania as required by Justice Brennan's approach. Indeed, there are not even any allegations as to how the subject truck made its way into Pennsylvania. Accordingly, Plaintiffs have failed to plead sufficient factual allegations that would permit this Court to assert personal jurisdiction over Defendant Peterbilt under a stream of commerce theory. *See Asahi Metal Indus. Co.*, 480 U.S. at 112 (plurality opinion) ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State");

---

102, 108-13, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion), stating, in a manner consistent with our own case law, that plaintiffs must instead rely on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Asahi*, 480 U.S. at 109, 107 S.Ct. 1026; *see D'Jamoos*, 566 F.3d at 102-03. Indeed, the Supreme Court has recently held that "[t]he bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the State." *Bristol-Myers Squibb Co. v. Superior Court*, — U.S. —, 137 S.Ct. 1773, 1783, 198 L.Ed.2d 395 (2017). We thus have no cause to revisit our Court's precedent on this issue, and we decline to adopt the Shukers' stream-of-commerce theory of specific personal jurisdiction. *See D'Jamoos*, 566 F.3d at 102-06.

*Shuker*, 885 F.3d at 780. Nevertheless, because *Shuker* did not explicitly overrule *Pennzoil Products Company*, this Court will perform a stream of commerce analysis.

*D'Jamoos*, 566 F.3d at 105-06; *Sieg*, 855 F. Supp. 2d 328-29. Therefore, the Court concludes that Plaintiffs have failed to establish that this Court can exercise specific personal jurisdiction over Defendant Peterbilt.

Defendant Peterbilt next argues that the claims against it should be dismissed with prejudice because any attempt to amend would be futile. (Doc. 26-1 at 9-10). The Third Circuit has "explained that if 'the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) (alteration in original) (quoting *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983)); *see also Shuker*, 885 F.3d at 781-82. In the case at hand, it is not clearly frivolous that the Court may be able to assert personal jurisdiction over Defendant Peterbilt under these circumstances. *See, e.g., Pennzoil Prods.*, 149 F.3d at 200-08; *Antonini v. Ford Motor Co.*, 2017 WL 3633287, at *2-*7 (M.D. Pa. 2017). Accordingly, the Court will allow a reasonable period of time for Plaintiffs to engage in jurisdictional discovery. The Court, however, cautions that "such jurisdictional discovery 'is not a license for the parties to engage in a fishing expedition,'" and that the scope of discovery is limited "'to only the factual questions necessary to determine . . . jurisdiction.'" *Shuker*, 885 F.3d at 781 n.20 (quoting *Schuchardt v. President of the U.S.*, 839 F.3d 336, 353-54 (3d Cir. 2016)).

Finally, because the Court resolves Defendant Peterbilt's Motion on jurisdictional grounds, the Court will not address Defendant Peterbilt's argument that Plaintiffs' Complaint fails to state a claim upon which relief can be granted. If and when Plaintiffs amend their Complaint, Defendant Peterbilt will be free to assert any such arguments again in a motion to dismiss.

## V. Conclusion

For the reasons outlined above, the Court will grant Defendant Peterbilt's Motion in part, deny it in part, dismiss the claims against Defendant Peterbilt for lack of personal jurisdiction, allow Plaintiffs' a period of time for jurisdictional discovery, and allow Plaintiffs' the opportunity to amend their Complaint. A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge